Woodson v Convent 1 LLC (2023 NY Slip Op 02857)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Woodson v Convent 1 LLC

2023 NY Slip Op 02857

Decided on May 30, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 30, 2023
Before: Kern, J.P., Friedman, Gesmer, González, Mendez, JJ. 


Index No. 160547/17 Appeal No. 16925 Case No. 2022-03114 

[*1]Heath Woodson et al., Plaintiffs-Appellants-Respondents,
vConvent 1 LLC et al., Defendants-Respondents-Appellants.

Newman Ferrara LLP, New York (Roger A. Sachar Jr. of counsel), for appellants-respondents.
Belkin ú Burden ú Goldman, LLP, New York (Magda L. Cruz of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Alexander M. Tisch, J.) entered July 11, 2022, which, to the extent appealed from as limited by the briefs, determined that plaintiffs and the class action members were entitled only to damages that occurred prior to the filing of the complaint, that current tenants were only members of the "subclass" seeking lease reformation and that the subclass was entitled only to declaratory relief, that certain class members had received rent-stabilized leases, and that defendants engaged in a fraudulent scheme to deregulate with respect to apartments 1B, 2C, and 5C, unanimously modified, on the law, to clarify that the base date is November 29, 2013 and that rent overcharge damages for all class members are to be calculated from this base date through the resolution of the action, to clarify that defendants must provide the tenants of all apartments with rent-stabilized leases and riders in the form prescribed by the New York State Division of Housing and Community Renewal (DHCR), and to deny plaintiffs' motion insofar as it sought summary judgment on their claim that defendants engaged in a fraudulent scheme to deregulate with respect to apartments 1B, 2C and 5C, and otherwise affirmed, without costs.
Contrary to the motion court's determination, the proper base date is November 29, 2013 — four years before the filing of the original complaint on November 29, 2017 — under the law as it stood before the enactment of the Housing Stability and Tenant Protection Act of 2019 (HSTPA) (L 2019, ch 36). Under the pre-HSTPA law, CPLR 213-a and Rent Stabilization Code (RSC) (9 NYCRR) § 2626.1 (a)(2) provided for a strict "lookback" period of four years from when the original complaint was filed. That lookback period, however, did not preclude a court from awarding damages for rent overcharges that accrued after the action was commenced. Thus, we modify the order to clarify that plaintiffs' damages are to be calculated from the base date of November 29, 2013 through the conclusion of the action.
As to plaintiffs' contention that the motion court erroneously determined that current tenants were not entitled to rent overcharges, the court did not expressly so rule, but rather, merely declined to address the overcharges and dealt solely with the declaratory relief sought. While it is unclear why the motion court chose not to address current tenants' rent overcharges, we modify the order and remand for further proceedings for the calculation of current tenants' rent overcharge damages accruing from the base date of November 29, 2013 through the conclusion of the action.
With regard to the court's determination that the tenants of apartments 1B, 3A, 4B, 4F, and 5E were previously afforded rent-stabilized leases, plaintiffs are correct that the rent-stabilized leases were not in the form approved by DHCR (see Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal, 194 AD3d 464, 471 [1st Dept 2021] [requirements [*2]of a rent-stabilized lease are "rigorous" and merely using "certain jargon" does not suffice]; RSC 2522.5[c][3] ["where a tenant . . . is not furnished . . . with a copy of the lease rider . . . the owner shall not be entitled to collect any adjustments in excess of the rent set forth in the prior lease unless the owner can establish that the rent collected was otherwise legal"]). We therefore modify the
order to apply to all current tenants the court's declaration that "any leases offered by Defendants to Plaintiffs and members of the Sub-Class are invalid and unlawful unless they are offered on lease forms and terms prescribed by DHCR."
However, with respect to the rent increases for 3A, 4B, 4F and 5E, while defendants concede that they may have made some overcharges, the motion court correctly determined that the record on plaintiffs' summary judgment motion does not establish as a matter of law that such overcharges were part of a "fraudulent scheme to remove an apartment from the protections of rent stabilization . . . . [which] tainted the reliability of the rent on the base date" (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 367 [2010]; see also Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 335-336[2020]). In particular, plaintiffs did not establish that defendants made any misrepresentation of material fact in connection with the rent increases for these units (see id., 35 NY3d at 356 n 7). That the increases were not justified by any major capital improvements (MCI) or individual apartment improvements (IAI) does not establish fraud, as there is no evidence that defendants ever made a statement justifying the increases based on any MCI or IAI and, in fact, defendants, in their interrogatory responses, affirmatively denied making any such statement.
Furthermore, plaintiffs' claim that these units were unlawfully "deregulated" after the base date is inaccurate. As the documents attached to plaintiffs' moving papers demonstrate, these units were registered with DHCR as rent stabilized throughout the period when defendants were receiving J-51 benefits, including on the base date and on the dates when each of the tenants executed their leases. Defendants offered each of the tenants in these units a lease that provided that "the apartment is subject to the Rent Stabilization Laws." That those leases may not have been in the form required by the Rent Stabilization Code (see 9 NYCRR § 2522.5[c][1]) may impose certain requirements on defendants (see 9 NYCRR § 2522.5[c][3]), but it does not constitute a "deregulation" of those units.
The motion court erred insofar as it granted plaintiffs summary judgment determining that defendants engaged in a fraudulent scheme with respect to apartments 1B, 2C and 5C that would justify using the Rent Stabilization Code default formula to determine their legal rents and overcharges. It is undisputed that [*3]the units were listed in DHCR registrations as "permanently exempt" from rent stabilization due to "high rent vacancy" in 2002 and 2003, and that defendants failed to treat them as rent stabilized when they began receiving J-51 benefits in 2005 (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 286 [2009]; Gersten v 56 7th Ave. LLC, 88 AD3d 189, 194 [1st Dept 2011]). However, for these purposes, fraud requires "evidence of a representation of material fact, falsity, scienter, reliance and injury" (Regina, 35 NY3d at 356 n 7). Here, plaintiffs did not put in a sworn statement by any of the tenants or anyone with personal knowledge and failed to otherwise demonstrate the elements of a claim of a fraudulent scheme. The initial failure to treat these units as rent stabilized upon receipt of J-51 benefits, based on a misinterpretation of the law, cannot be deemed fraudulent (see Casey v Whitehouse Estates, Inc., 39 NY3d 1104, 1107 [2023] ["the fraud exception to the lookback rule is generally inapplicable to Roberts overcharge claims"] [internal quotation marks omitted], quoting Regina, 35 NY3d at 356). As to defendants' delay in re-registering the units after Roberts and Gersten, it cannot be said that the record establishes fraud as a matter of law (see Austin v 25 Grove St. LLC, 202 AD3d 429, 430-431 [1st Dept 2022] ["While irregularities in the DHCR rent history and defendants' failure to provide proper rent-stabilized renewal leases raise questions of fact, . . . summary judgment in plaintiff's favor based on a finding of fraud is not warranted at this stage, given the parties' competing contentions as to the reasons for the discrepancies in the DHCR history and questions of scienter"]).
We also note that the motion court determined that fraud was not established as to tenant Urisaka's 2014—2016 tenancy in apartment 1B and that the legal rent could be established, and any overcharge could be calculated, without resorting to use of the default formula.[FN1] Accordingly, in the absence of plaintiffs' establishment of a fraudulent scheme affecting the reliability of the base date rent, the legal rent and any overcharge for the subsequent tenants in 1B should be based on the determination of the same legal rent established for 1B on the base date as will be used to determine Urisaka's claim.
We have considered the parties' remaining contentions and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 30, 2023
Footnotes

Footnote 1: The motion court stated an intention to treat Urisaka's rent as apartment 1B's "initial registration" and to have plaintiffs seek a determination from the DHCR to determine the legal rent on the base date pursuant to the "pre-HSTPA versions of RSL § 26-516." Plaintiffs challenged that determination on grounds that we find unavailing. Nevertheless, we note that the Rent Stabilization Code provides that "[t]he initial legal regulated rent for housing accommodations subject to this Code solely as a condition of receiving or continuing to receive benefits pursuant to section 11-243 (formerly J51-2.5) or 11-244 (formerly J51-5.0) of the Administrative Code of the City of New York, as amended, shall be the rent charged the initial rent-stabilized tenant" (9 NYCRR 2521.1[h]), and that Supreme Court and the DHCR have concurrent jurisdiction over rent overcharge claims (Matter of Hefti v New York State Div. of Hous. & Community Renewal, 203 AD3d 605 [1st Dept 2022]; see also Administrative Code § 26-516 [a] [2], as amended by L 2019, ch 36).